UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM BROWN JR., WILLIAM BROWN SR.,
CORY CARRIGAN, AND
R/C AUTOMOTIVE AND TOWING, LLC,

*Plaintiffs,*

*v.* Case No. 2:26-cv-2096

CITY OF MILWAUKEE, JASON RYDZEWSKI,
COLIN ENK, SEAN CARLETON, SYDNEY LYONS,
WILLIAM BILTY, AND RACHEL SILVERSTEIN,

*Defendants.*

---

# COMPLAINT

---

Plaintiffs William Brown Jr., William Brown Sr., Cory Carrigan, and R/C Automotive and Towing, LLC, by their attorneys, Strang Bradley, LLC, state as follows:

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 seeking redress for the deprivation, under color of state law, of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures.

2. R/C Automotive and Towing, LLC ("R/C Towing") is a small, family-run auto repair and towing business on West Bradley Road in Milwaukee. Its owner, Cory Carrigan, and its manager, William Brown Sr., work there alongside their sons, including William Brown Jr. R/C Towing has no employees outside the family.

3. On Friday, September 26, 2025, officers with the Milwaukee Police Department ("MPD") came to the business to investigate a stolen Toyota RAV4. R/C Towing was an unwitting third party to the scheme and itself a victim; it had never been paid for the towing.

4. Instead of walking to the front door or asking anyone for permission, a Milwaukee Police sergeant, Defendant Jason Rydzewski, walked through the business's gated yard to an open garage door, pushed past the manager standing in the office doorway, and walked past a sign reading "Do Not Enter. Employees Only. Management." After searching the office, Rydzewski walked through a second door marked "Do Not Enter" and proceeded to search the business's restrooms.

5. Rydzewski had no warrant, and no one consented to his entry into the business.

6. After the sergeant had finished searching, additional Milwaukee police officers entered the business and, without a warrant or exigent circumstances, forced open the door to a locked storage room.

7. The City of Milwaukee has been sued repeatedly for exactly this kind of conduct. Milwaukee Police Department officers repeatedly enter homes and businesses without a warrant and without any recognized exception to the warrant requirement and then continue to search after any conceivable justification has ended. The City has not changed its policies, its training, or its supervision in response.

8. This lawsuit seeks to vindicate Plaintiffs' Fourth Amendment rights and to hold the City of Milwaukee accountable for a pattern of warrantless entries that it has known about and tolerated for years.

## JURISDICTION AND VENUE

9. This lawsuit is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

10. This Court has jurisdiction over federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), and over the state law indemnification claim under 28 U.S.C. § 1367(a).

11. Venue is proper under 28 U.S.C. § 1391(b)(2). Defendant City of Milwaukee is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within the judicial district.

## PARTIES

12. Plaintiff William Brown Jr. is a resident of the State of Wisconsin and the County of Milwaukee.

13. Plaintiff William Brown Sr. is a resident of the State of Wisconsin and the County of Milwaukee.

14. Plaintiff Cory Carrigan is a resident of the State of Wisconsin and the County of Milwaukee.

15. Plaintiff R/C Automotive and Towing, LLC is a Wisconsin limited liability company doing business within the State of Wisconsin. R/C Automotive and Towing operates an automotive repair shop and towing service.

16. Defendant City of Milwaukee is a political subdivision of the state of Wisconsin and is or was the employer of the individual Defendants and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

17. At all relevant times, Defendant Rydzewski was employed as a sergeant for the Milwaukee Police Department.

18. At all relevant times, Rydzewski acted under the color of state and local law.

19. At all relevant times, Rydzewski acted within the scope of his employment with the City of Milwaukee.

20. Rydzewski is sued in his individual capacity.

21. At all relevant times, Defendant Enk was employed as a police officer for the Milwaukee Police Department.

22. At all relevant times, Enk acted under the color of state and local law.

23. At all relevant times, Enk acted within the scope of his employment with the City of Milwaukee.

24. Enk is sued in his individual capacity.

25. At all relevant times, Defendant Carleton was employed as a police officer for the Milwaukee Police Department.

26. At all relevant times, Carleton acted under the color of state and local law.

27. At all relevant times, Carleton acted within the scope of his employment with the City of Milwaukee.

28. Carleton is sued in his individual capacity.

29. At all relevant times, Defendant Lyons was employed as a police officer for the Milwaukee Police Department.

30. At all relevant times, Lyons acted under the color of state and local law.

31. At all relevant times, Lyons acted within the scope of his employment with the City of Milwaukee.

32. Lyons is sued in his individual capacity.

33. At all relevant times, Defendant Bilty was employed as a police officer for the Milwaukee Police Department.

34. At all relevant times, Bilty acted under the color of state and local law.

35. At all relevant times, Bilty acted within the scope of his employment with the City of Milwaukee.

36. Bilty is sued in his individual capacity.

37. At all relevant times, Defendant Silverstein was employed as a police officer for the Milwaukee Police Department.

38. At all relevant times, Silverstein acted under the color of state and local law.

39. At all relevant times, Silverstein acted within the scope of her employment with the City of Milwaukee.

40. Silverstein is sued in her individual capacity.

## FACTS

### A. The Business and Its Premises

41. R/C Towing occupies the western portion of a one-story commercial building on the southeast corner of West Bradley Road and North 76th Street in Milwaukee.

42. The building contains, from east to west, a public entrance and lobby facing the parking lot on the east side; a large room used as an event venue called the Milwaukee Garage Dance Studio, which is also owned by Plaintiff Carrigan; two single-user restrooms, marked "Men" and "Women," at the south end of the dance studio; a storage room; the R/C Towing office; and the R/C Towing garage.



43. The only public entrance to the building is on the west side, facing the customer parking lot. The public entrance is marked with signage for both R/C Towing and the dance studio.

44. At the time of this occurrence, the dance studio was open to the public only during posted hours: 6:00 p.m. to 11:00 p.m. on Mondays, Wednesdays, and Saturdays. It was closed to the public on Friday, September 26, 2025.

45. The gated driveway, garage, office, and storage room are never open to the public.

46. A chain-link fence encloses the garage and driveway, running along the north side of the property facing West Bradley Road and along the east side of the building. Access to the driveway is through a gate in that fence. The gate is locked at night and unlocked during business hours.



47. The driveway inside the fence runs north to south along the east side of the building and is used to store vehicles that have been towed or are awaiting service. It is not open to the public. Members of the public who need to retrieve a vehicle do so by coming to the public entrance and speaking with an employee.

48. The garage door opens onto the south end of the driveway.



49. Carrigan, Brown Jr., Brown Sr., and other R/C Towing employees spend much of their workday repairing vehicles inside the garage.

50. Carrigan, Brown Jr. and Brown Sr. understood the garage to be off limits to the public.

51. A door connects the garage to the R/C Towing office. Immediately next to that door is a posted sign that reads: "Do Not Enter. Employees Only. Management."

52. Carrigan, Brown Jr., Brown Sr., and other employees stay in the office when they are not working on vehicles.

53. Carrigan, Brown Jr. and Brown Sr. would often leave personal items in the office during the day.

54. Carrigan, Brown Jr., Brown Sr., and other employees felt comfortable leaving their personal items in this office because the public was not permitted to enter the area.

55. R/C Towing, Carrigan, Brown Sr., Brown Jr., and other employees stored records and other business documents in the office.

56. A second door connects the office to the dance studio. That door is marked with a posted sign that reads: "Do Not Enter."

57. The storage room is kept locked.

58. Every person who works at R/C Towing is a member of the Carrigan/Brown family. R/C Towing has no employees who are not family members.

**B. The Toyota RAV4**

59. On or about September 26, 2025, R/C Towing was hired to tow a Toyota RAV4 and to hold it until a car transporter picked it up.

60. The car transporter never came.

61. R/C Towing later learned that the RAV4 was one of several vehicles involved in a scheme in which stolen vehicles were routed through unwitting towing companies.

62. R/C Towing was never paid for towing or storing the RAV4.

## C. Sgt. Rydzewski Enters the Business

63. On Friday, September 26, 2025, during business hours, Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein were dispatched to 7419 West Bradley Road to locate the RAV4.

64. There was no ongoing emergency, and the Defendants had no reason to believe there was an ongoing emergency.

65. The officers had no warrant.

66. The officers did not enter through the building's public entrance.

67. Instead, Rydzewski walked through the gate in the chain-link fence and down the driveway among the stored vehicles.

68. Unlike the public parking lot, which is concrete, the non-public driveway is a dirt road.

69. No one at R/C Towing consented to Rydzewski's entry into the gated, non-public driveway.

70. Rydzewski searched for the stolen RAV4 in the gated driveway.

71. As he searched, Rydzewski eventually reached the open garage door at the south end of the building.

72. From the open garage door, Sgt. Rydzewski looked into the garage and, through the windows between the garage and the office, into the office.

73. Rydzewski saw an individual in the office whom he later learned was William Brown Jr.

74. Brown Jr. walked away from him, farther into the building.

75. Rydzewski did not see Brown Jr. commit any crime.

76. Rydzewski did not see Brown Jr. with a weapon.

77. Rydzewski had not previously interacted with Brown Jr. and did not know who he was.

78. Rydzewski did not announce himself, identify himself, or ask anyone for permission to enter any part of the building.

79. William Brown Sr., the business's manager, was standing in the doorway between the garage and the office, next to the "Do Not Enter. Employees Only. Management." sign.

80. Rydzewski entered the garage.

81. No one at R/C Towing consented to Rydzewski entering the non-public garage.

82. Rydzewski then walked to the office door and pushed past Brown Sr. into the non-public office.

83. Brown Sr. did not consent to Rydzewski's entry into the office.

84. No one else at R/C Towing consented to Rydzewski's entry into the office.

**D. The Searches**

85. Rydzewski searched the office for evidence or contraband.

86. His search yielded nothing of interest.

87. From the office, Sgt. Rydzewski walked through another door marked "Do Not Enter" into the dance studio.

88. After Brown Jr. left the office, Rydzewski did not see him enter or leave any room.

89. Rydzewski entered and searched the men's restroom but found nothing of interest.

90. Rydzewski, a male, then opened the door to the women's restroom and entered it.

91. Rydzewski later found a handgun beneath the sink in the women's restroom.

92. The handgun was not in plain view from anywhere Rydzewski was lawfully entitled to be.

93. At no point before entering the women's restroom did Rydzewski have probable cause to believe that a crime had been committed inside of the business or that evidence of a crime would be found in the restroom.

94. At no point did Rydzewski have an objectively reasonable basis to believe that anyone inside the building was injured, in danger, or in need of emergency assistance.

95. At no point did Rydzewski have an objectively reasonable basis to believe that evidence was about to be destroyed.

96. Rydzewski was not in hot pursuit of a fleeing suspect.

97. Rydzewski had not arrested anyone at the time he entered the restrooms and was not conducting a protective sweep incident to an arrest.

98. Rydzewski had ample time to leave the building, secure the premises from outside, and apply for a warrant—even if he had probable cause, which he didn't.

99. He did not do so.

100. Rydzewski had never seen Brown Jr. with a gun.

101. Rydzewski had never seen the gun before finding it in the restroom.

102. Rydzewski did not see how the gun ended up in the restroom.

103. Rydzewski knew that customers and employees of R/C Towing and the dance studio had access to the restrooms.

104. Rydzewski lacked probable cause to believe the gun belonged to Brown Jr.

105. Rydzewski lacked probable cause to believe that Brown Jr. had been carrying the weapon.

106. Additionally, Rydzewski lacked probable cause to believe Brown Jr. did not have lawful authority to carry a gun.

107. Nevertheless, after Rydzewski found the gun in the restroom, he left the restroom and placed Brown Jr. under arrest.

108. Brown Jr. was then transported to jail.

109. He remained in jail for approximately one week, including through the weekend.

110. Brown Jr. was charged with carrying a concealed weapon.

111. Enk's MPD report states that body-worn camera footage of Brown Jr.'s arrest would be captured and uploaded to Axon Evidence.

112. The prosecutor later advised Brown Jr.'s defense counsel that no body-worn camera footage was available.

113. The State dismissed Brown Jr.'s case after his attorney filed a motion to suppress evidence asserting that Rydzewski had violated Brown Jr.'s Fourth Amendment rights.

**E. The Search and Seizure of Brown Sr.**

114. After Rydzewski arrested Brown Jr., he approached Brown Sr.

115. Brown Sr. was speaking with a customer inside the store.

116. Rydzewski told Brown Sr. to put his hands up because he was going to frisk him.

117. At this point, Brown Sr. was not free to leave.

118. Rydzewski did not have reasonable suspicion that Brown Sr. had committed a crime, was committing a crime, or would commit a crime.

119. Rydzewski lacked reasonable suspicion to believe that Brown Sr. was armed and dangerous.

120. Rydzewski proceeded to frisk Brown Sr.

121. Brown Sr. did not consent to the frisk.

122. Rydzewski's frisk did not reveal any weapons or contraband.

123. Rydzewski then ordered Brown Sr. and the customer out of the store.

124. Once Brown Sr. and the customer were out of the store, Rydzewski informed both of them that they were not free to leave.

125. Rydzewski instructed another officer to stay with Brown Sr. and the customer to ensure they did not leave.

126. At one point during this seizure, Brown Sr. attempted to take out his phone, and the officer ordered him to put it away.

127. Neither Brown Sr. nor the customer was ever arrested or charged.

**F. The Search of the Locked Storage Room and the Employee-Only Room**

128. After Rydzewski found the handgun, Enk, Carleton, Lyons, Bilty, and Silverstein entered R/C Towing.

129. By that time, the officers had taken complete control of the premises without consent.

130. The officers knew every person inside the building and accounted for them.

131. The officers knew the handgun had been secured.

132. The officers had no reason to believe evidence was at risk of being destroyed.

133. R/C Towing, Carrigan, Brown Sr., Brown Jr., and other employees used the locked storage room to store property.

134. The storage room door remained locked to exclude members of the public from the room.

135. Over one hour after Brown Jr. was arrested, Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein forced open the locked door of the R/C Towing storage room.

136. To the extent any of those Defendants did not directly participate, each was present for the forced entry.

137. The Defendants did not have consent to enter the locked storage room.

138. The Defendants had no warrant to enter the storage room and no basis to believe anyone, any weapon, or evidence was inside.

139. Forcing the locked door open damaged it.

140. Each knew that the officers had no warrant and no exigency.

141. Each had a realistic opportunity to stop the forced entry, and none did so.

142. The Defendants then searched the storage room. Nothing was discovered or seized.

143. After searching the locked storage room, Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein entered the employees-only office.

144. The Defendants proceeded to search the employees-only office, including opening cabinets and rifling through drawers.

145. The Defendants found no contraband or items of interest.

146. At no time on September 26, 2025, did any Defendant have a warrant to enter or search any part of 7419 West Bradley Road.

147. At no time on September 26, 2025, did any Plaintiff, or anyone with authority to do so, consent to any Defendant's entry into the yard, the garage, the office, the dance studio, the restrooms, or the storage room.

148. At no time on September 26, 2025, did any recognized exception to the warrant requirement authorize any Defendant's entry into or search of any non-public area of R/C Towing.

149. As a direct and proximate result of Defendants' conduct, R/C Towing suffered property damage, business interruption, and expenses; Carrigan, Brown Sr., and Brown Jr. suffered the invasion of their privacy, humiliation, fear, loss of reputation, and emotional distress; and Brown Jr. suffered loss of liberty.

### G. The City of Milwaukee's Pattern and Practice of Unlawful Warrantless Entries onto Private Property

150. The conduct described above was the product of the City of Milwaukee's longstanding policy, practice, and custom of permitting its police officers to enter and search homes and businesses without a warrant and without any recognized exception to the warrant requirement, and of failing to train, supervise, or discipline its officers with respect to the limits of warrantless entry.

151. The Fourth Amendment's requirement that officers obtain a warrant before entering a home or a non-public area of a business, absent consent or a genuine exigency, has been clearly established for decades. *See, e.g., Payton v. New York*, 445 U.S. 573 (1980); *See v. City of Seattle*, 387 U.S. 541 (1967); *Mincey v. Arizona*, 437 U.S. 385 (1978).

152. Since at least 2014, it has been clearly established in the Seventh Circuit that the "community caretaking" doctrine does not permit a warrantless entry into a building. *Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014). The Supreme Court confirmed that rule in *Caniglia v. Strom*, 593 U.S. 194 (2021).

153. It has likewise long been clearly established that a warrantless entry justified by an emergency must end when the emergency ends, and that officers may not re-enter or continue searching once the premises are secure and there is time to obtain a warrant. *Mincey*, 437 U.S. at 393; *Thompson v. Louisiana*, 469 U.S. 17 (1984); *Flippo v. West Virginia*, 528 U.S. 11 (1999).

154. Despite this settled law, Milwaukee police officers have repeatedly entered and searched homes and businesses without a warrant on legal theories that do not exist, and the City has repeatedly been put on notice of that practice through litigation in this Court, including:

155. In 2018, the City of Milwaukee entered into a court-approved settlement agreement, which remains in effect and under independent monitoring, requiring MPD and the Fire and Police Commission ("FPC") to reform the Department's training, supervision, data collection, and discipline with respect to Fourth Amendment stops and frisks, after the City of Milwaukee was shown to have a widespread practice of suspicionless stops and searches. *See Collins v. City of Milwaukee*, No. 17-cv-234 (E.D. Wis.).

156. On December 8, 2020, after the owner of Boney's Foods was shot outside his store, MPD officers lawfully entered the store to check for victims, confirmed that it was empty, and secured it. About an hour later, however, the officers reentered the store without a warrant and seized the owner's property. The officers admitted that they reentered to collect evidence and invoked a "crime scene exception" to the warrant requirement, which does not exist, and the "Wisconsin standard" of community

caretaking, which the Seventh Circuit had rejected for building entries six years earlier. *See Kaywood v. City of Milwaukee*, 825 F. Supp. 3d 825 (E.D. Wis. 2026).

157. By August 2022, after repeated warrantless responses at the Robinson-Tomlinson residence, MPD supervisors and the FPC had received direct notice of recurring Fourth Amendment concerns at that address. MPD created address-specific warnings and instructions, yet officers continued to conduct warrantless entries or seizures during later responses. Defendant Carleton participated in the April 11, 2023, response, during which the residents denied entry, and Carleton required a resident to present herself for police inspection. *See Robinson v. City of Milwaukee*, No. 24-CV-264-JPS-JPS, 2026 WL 836940 (E.D. Wis. Mar. 26, 2026).

158. On September 24, 2025 (two days before the events in this case), an MPD officer responded to a delivery driver's report that packages were accumulating at a home, found the door locked, conducted no investigation, and smashed the glass front door with his baton to enter. When dispatch informed him that the homeowner had called to report the break-in, the officer continued searching the home, and he refused to leave when the homeowner arrived and asked him to. *Cousineau v. City of Milwaukee*, No. 25-cv-1541 (E.D. Wis.).

159. Upon information and belief, the City of Milwaukee did not discipline any officer involved in the incidents described above other than the officer involved in *Cousineau*.

160. Upon information and belief, the City of Milwaukee did not adequately revise their Standard Operating Procedure, training curriculum, or supervisory practice in response to any of the incidents described above.

161. The City of Milwaukee, through MPD, is responsible for training its officers on search-and-seizure law, including decisions of Wisconsin courts, the Seventh Circuit, and the United States Supreme Court governing whether and when an officer may enter private property without a warrant.

162. The Chief of Police and the Fire and Police Commission of the City of Milwaukee are the final policymakers for the City with respect to MPD policies, procedures, training, supervision, and discipline. Wis. Stat. § 62.50.

163. The Chief of Police, the Fire and Police Commission, and the Common Council of the City of Milwaukee had actual notice of the incidents described above.

164. The need for training, supervision, and discipline on the limits of warrantless entry was obvious, and the City's failure to do so was substantially certain to result in further violations of the kind described in this complaint.

165. The City's policy, practice, and custom, and its deliberate indifference to the need to train, supervise, and discipline its officers, were the moving force behind the violations of Plaintiffs' rights described in this complaint.

**COUNT I:**
**Claim for Unlawful Entry into Business**
**(R/C Towing, Brown Sr., Brown Jr., and Carrigan against Rydzewski)**

166. Plaintiffs reallege the above paragraphs.

167. R/C Towing's gated driveway was a non-public workspace used by R/C Automotive and Towing, LLC. Carrigan owned and operated R/C Towing and controlled its non-public business premises.

168. R/C Towing and Carrigan both had a reasonable expectation of privacy in the gated driveway.

169. Rydzewski's entry and search of the gated driveway violated R/C Towing's and Carrigan's Fourth Amendment rights.

170. The R/C Towing garage was a non-public workspace used by R/C Automotive and Towing, LLC. Carrigan owned and operated R/C Towing and controlled its non-public business premises. Brown Jr. worked for R/C Towing and frequently worked in the garage with the understanding that it was off-limits to the public.

171. R/C Towing, Carrigan, Brown Sr., and Brown Jr. each had a reasonable expectation of privacy in the garage.

172. Rydzewski's entry into the garage violated R/C Towing's, Carrigan's, Brown Sr.'s, and Brown Jr.'s Fourth Amendment rights.

173. The R/C Towing office was a non-public workspace used by R/C Automotive and Towing, LLC. Carrigan owned and operated R/C Towing and controlled its non-public business premises. Brown Sr. and Brown Jr. worked for R/C Towing and were working in the office when Rydzewski arrived.

174. R/C Towing, Carrigan, Brown Sr., and Brown Jr. each had a reasonable expectation of privacy in the office.

175. Rydzewski's entry and search of the office violated R/C Towing's, Carrigan's, Brown Sr.'s, and Brown Jr.'s Fourth Amendment rights.

176. R/C Towing and Carrigan had a reasonable expectation of privacy in the women's restroom.

177. Rydzewski's entry into and search of the women's restroom violated R/C Towing's and Carrigan's Fourth Amendment rights.

178. The aforementioned actions of Defendant Rydzewski were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs demand actual or compensatory damages against Defendant Rydzewski; punitive damages because he acted in reckless disregard of Plaintiffs' rights; costs and attorneys' fees; and such other relief as the Court deems just and equitable.

**COUNT II:**
**Claim for Unlawful Arrest**
**(Brown Jr. against Rydzewski)**

179. Plaintiff Brown Jr. realleges the above paragraphs.

180. When Defendant Rydzewski arrested Plaintiff Brown Jr., he did so without probable cause to believe Brown Jr. had committed a crime, without a warrant, and without any other lawful justification.

181. Rydzewski nevertheless arrested Brown Jr. and caused him to be detained in jail for approximately one week.

182. By arresting Brown Jr. without probable cause, Defendant Rydzewski violated Brown Jr.'s Fourth Amendment right to be free from unreasonable seizure.

183. The aforementioned actions of Defendant Rydzewski were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff Brown Jr.'s injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Brown Jr. demands actual or compensatory damages against Defendant Rydzewski; punitive damages because Defendant Rydzewski acted in reckless disregard of Brown Jr.'s rights; costs and attorneys' fees; and such other relief as the Court deems just and equitable.

## COUNT III:
## Claim for Unlawful Entry and Search of Storage Room and Employee-Only Lounge and Failure to Intervene (R/C Towing, Brown Sr., Brown Jr., and Carrigan against Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein)

184. Plaintiffs reallege the above paragraphs.

185. The storage room was a locked, non-public area used by R/C Automotive and Towing, LLC, and its employees, including Brown Sr. and Brown Jr., and controlled by Carrigan. The lock and the room's location within the non-public portion of the building manifested their reasonable expectation of privacy in the room and its contents.

186. The R/C Towing office was a non-public workspace used by R/C Automotive and Towing, LLC. Carrigan owned and operated R/C Towing and controlled its non-public business premises. Brown Sr. and Brown Jr. worked for R/C Towing and were working in the office when Rydzewski arrived.

187. When the officers forced open and searched the storage room, they had no warrant, consent, or exigency.

188. One or more of Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein directly participated in forcing open the locked door or searching the storage room.

189. To the extent any of those Defendants did not directly participate, each was present for the forced entry, knew that the officers lacked a warrant, consent, or exigency, had a realistic opportunity to prevent or stop the entry and search, and failed to do so.

190. Defendants' entry and search, and the failure of the non-participating Defendants to intervene, violated the Fourth Amendment rights of R/C Automotive and Towing, LLC, Carrigan, Brown Sr., and Brown Jr.

191. The aforementioned actions of Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs demand actual or compensatory damages against Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein; punitive damages because they acted in reckless disregard of Plaintiffs' rights; costs and attorneys' fees; and such other relief as the Court deems just and equitable.

**COUNT IV:**
**Claim for Unlawful Search and Seizure**
**and Failure to Intervene**
**(Brown Sr. against Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein)**

192. Plaintiffs reallege the above paragraphs.

193. Defendant Rydzewski searched and seized Brown Sr. by patting him down. Brown Sr. did not consent, and Rydzewski did not have reasonable suspicion or any other constitutional justification to support that search and seizure.

194. Defendant Rydzewski continued to seize Brown Sr. by ordering him outside of the business but not allowing him to leave. Brown Sr. did not consent to this seizure, and Defendant Rydzewski did not have reasonable suspicion or any other constitutional justification to support the continued seizure.

195. The actions of Defendant Rydzewski in frisking and then continuing to seize Brown Sr. without a warrant and without any other permissible lawful reason to do so violated Brown Sr.'s Fourth Amendment right to be free from unreasonable search and seizure and thus violated 42 U.S.C. § 1983.

196. Defendants Enk, Carleton, Lyons, Bilty, and Silverstein knew Rydzewski seized Brown Sr. by preventing him from leaving.

197. Defendants Enk, Carleton, Lyons, Bilty, and Silverstein knew or should have known there was no reasonable suspicion to seize Brown Sr. but allowed Rydzewski to seize him anyway.

198. Defendants Enk, Carleton, Lyons, Bilty, and Silverstein failed to intervene in a constitutional violation they knew was happening before them and could have stopped.

199. Defendants Enk, Carleton, Lyons, Bilty, and Silverstein thus violated Brown Sr.'s Fourth Amendment rights to be free from unreasonable seizures and searches.

200. The aforementioned actions of Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein were the direct and proximate cause of the Brown Sr.'s dignitary injuries and deprivation of personal liberty set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Brown Sr. demands actual or compensatory damages against Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein; punitive damages because they acted in reckless disregard of Plaintiff's rights; costs and attorneys' fees; and such other relief as the Court deems just and equitable.

**COUNT V:**
***Monell* Claim for Unconstitutional Policy, Practice, or Custom and Failure to Train, Supervise, or Discipline**
**(R/C Towing, Brown Sr., Brown Jr., and Carrigan against the City of Milwaukee)**

201. Plaintiffs reallege the above paragraphs.

202. The individual Defendants violated Plaintiffs' Fourth Amendment rights as set forth in Counts I through IV.

203. At the time of those violations, the City of Milwaukee had a widespread, persistent, and well-settled practice or custom under which MPD officers treated an initial reason to approach or enter private property as continuing authority to enter or

search non-public interior areas even when the original justification was absent, disproved, or had ended.

204. Upon information and belief, the City also maintained a widespread, persistent, and well-settled practice of initiating and continuing investigatory detentions without individualized reasonable suspicion of criminal activity, and conducting pat-down frisks without individualized reasonable suspicion that the person was armed and dangerous, when no other lawful justification existed.

205. Before September 26, 2025, the City of Milwaukee had actual or constructive notice of that practice through the prior incidents, complaints, litigation, and internal MPD communications described above. Those matters involved MPD officers and repeated warrantless entries, reentries, searches, or attempted entries into homes and businesses after any lawful justification was absent or had ended.

206. The *Collins* litigation and the court-approved settlement described above also put the City of Milwaukee on notice of allegations that MPD officers repeatedly detained people without individualized reasonable suspicion of criminal activity and frisked them without individualized reasonable suspicion that they were armed and dangerous. The settlement required changes to MPD's policies, training, supervision, auditing, and discipline concerning stops and frisks.

207. Under Wis. Stat. § 62.50, the Chief of Police establishes policies governing the control and management of MPD and is responsible for the Department's efficiency and the conduct of its officers. The Fire and Police Commission reviews MPD operations, may issue written directives to the Chief, and exercises the supervisory and disciplinary

authority assigned to it by law. These officials possessed final policymaking or corrective authority for the City with respect to the functions relevant to Plaintiffs' claims.

208. Despite notice of the recurring conduct, the City of Milwaukee failed to provide adequate training, supervision, and corrective measures, and failed adequately to implement and enforce policies governing warrantless entries, searches, investigatory detentions, and pat-down frisks. These failures included inadequate training and supervision concerning the separate justification required to detain a person and to frisk that person, and the requirement to end a detention when its lawful justification no longer exists.

209. The need for those measures was obvious from the recurring incidents described above, and the City's failure to take them despite that notice amounted to deliberate indifference to the Fourth Amendment rights of people and businesses that MPD officers would encounter.

210. These practices and deficiencies caused the unlawful entries and searches described above and the unlawful frisk and continued detention of Brown Sr. Rydzewski frisked Brown Sr. without individualized reasonable suspicion that he was armed and dangerous, then ordered him outside and kept him detained without individualized reasonable suspicion of criminal activity or any other lawful justification. The City of Milwaukee's failure to correct the recurring practice of unjustified detentions and frisks, despite notice, was a moving force behind these violations of Brown Sr.'s Fourth Amendment rights.


Case 2:26-cv-02096-PP Filed 11/11/26 Page 28 of 30 Document 1

211. The City's practice or custom and its deliberately indifferent failure to provide adequate policy, training, supervision, and corrective measures were both the moving force behind and a direct and proximate cause of the violations of Plaintiffs' constitutional rights and the resulting injuries and damages.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs demand actual or compensatory damages against Defendant City of Milwaukee, plus the costs of this action, attorneys' fees, and such other and further relief as the Court deems just and equitable.

**COUNT VI:**
**Indemnification Claim Against the City of Milwaukee**
**(R/C Towing, Brown Sr., Brown Jr., and Carrigan against the City of Milwaukee)**

212. Plaintiffs reallege the above paragraphs.

213. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which their employees are liable for acts within the scope of their employment.

214. At all times relevant to this action, the individual Defendants engaged in the complained-of conduct while on duty and in the course and scope of their employment with the City of Milwaukee.

WHEREFORE, Plaintiffs ask this Court to find that, under Wis. Stat. § 895.46, the City of Milwaukee is obligated to defend Defendants Rydzewski, Enk, Carleton, Lyons, Bilty, and Silverstein in this action and to satisfy any judgment entered against them.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: November 11, 2026

/s/ William E. Grau
John H. Bradley
Wisconsin Bar No. 1053124
R. Rick Resch
Wisconsin Bar No. 1117722
William E. Grau
Wisconsin Bar No. 1117724
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
William@StrangBradley.com
Counsel for Plaintiffs